# Appeal of the Pittsburgh & Connellsville Railroad Company.

| 99 | 177 |
|----|-----|
| 149 | 246 |
| 99 | 177 |
| 156 | 53 |
| 99 | 177 |
| 208 | 532 |
| 99 | 177 |
| 211 | 225 |

A. agreed with a railroad company to construct and equip at his own cost a line of telegraph along the company's road. The consideration for this work was "the maintenance and working of the wire by the railroad company when constructed," and also the payment by the company to A. of one half of all its earnings, subject to the stipulations of a certain agreement previously entered into by the railroad company with a telegraph company. Said last named agreement provided that the wire in question should be used for railroad and commercial purposes, and stipulated for a certain division of rates between the parties thereto. A. constructed the telegraph, and the railroad company operated it, paying for nine years continuously one half of all its earnings to A. in the manner provided by the contract. At the expiration of that time the company ceased to use the wire for commercial purposes. A. thereupon filed a bill in equity praying for an account of moneys which had been or which ought to have been received by the company, for the payment of so much thereof to him as should be found due, and also for the ascertainment of damages due for breach of contract. *Held*, that there was an implied covenant on the part of the railroad company to continue to use the telegraph for commercial purposes, and that there had been a breach of such implied covenant; but *Held*, that the remedy of complainant for such breach was at law, and not in equity. *Held*, further, that equity could not take jurisdiction on the score of account, as the accounting must be purely unilateral and constitute a mere basis for ascertaining damages. *Held*, therefore, that since complainant had an adequate remedy at law and exhibited no special grounds of equitable relief, the bill must be dismissed.

November 14 and 15, 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from a decree of the Court of Common Pleas of *Fayette county*: In Equity: Of October and November Term, 1880, No. 231.

Bill in equity, by Robert M. Modisette, et al., against the Pittsburgh and Connellsville Railroad Company. After answer filed, the cause was referred to an examiner and master, to whose report the defendant filed exceptions, which the court, after argument, dismissed, confirming the report, and a decree

3 OUTERBRIDGE.—12

was entered in favor of the complainants. Among the exceptions thus dismissed was the following: "The master erred in not reporting that the complainants have a full, complete and adequate remedy at law for any supposed injury, and that the bill should be dismissed at the costs of the complainants." The facts of the case, so far as material to the question of equitable jurisdiction, are fully stated in the opinion of this court.

The defendant took this appeal, assigning for error, inter alia, the overruling of the above exception, and the entering of the decree in favor of the complainant.

*Welty McCullogh* (*Johns McCleave* and *W. H. Coldren* with him), for the appellant.

*Edward Campbell* (with him *L. H. Ruby*), for the appellees.—This is a case in which either a court of equity or a court of law would have jurisdiction, for while there may be a remedy at law it is not as appropriate, convenient or adequate as that which a court of equity may administer. In such case the objection to the jurisdiction in equity should be taken by demurrer, or plea to the jurisdiction. After answer, and the taking of voluminous testimony, and a master's report thereon, it is too late, even if well founded, which we contend, in this case, it is not: Sunbury & Erie R. R. Co. *v.* Cooper, 9 Cas. 278; Sallade *v.* School Directors, 2 Pearson 48; Adams *v.* Beach, 1 Phila. Rep. 99; Penn *v.* Lord Baltimore, 1 Ves. Sr. 446.

Mr. Justice GREEN delivered the opinion of the court, January 9th 1882.

The proceeding in this case was a bill in equity, which prayed for an account of moneys received, and which ought to have been received, by the defendant, and for the payment to the plaintiffs of so much thereof as might be found due to them, and also for the ascertainment of damages due for the breach of a contract.

The instrument upon which the proceeding was founded was a contract in writing made between James L. Shaw and the Pittsburgh and Connellsville Railroad Co. It is dated March 6th 1865, and, in substance, it provides that Shaw shall, at his own cost, construct and equip a line of telegraph along the company's railroad from Connellsville to Uniontown. The consideration for this work is "the maintenance and working of the line by the said railroad company when constructed, and also the payment by the company to Shaw of one-half of all its earnings, subject to the stipulations of a previous agreement made by the P. & C. R. R. Co. with the United States Telegraph Co. for the construction of the same line of telegraph,

and dated March 1st 1865. This latter agreement provided that the line should be used for commercial and railroad business, and that the moneys received at Uniontown for messages over any line or lines of the U. S. Tel. Co. should be retained by the P. & C. R. R. Co., and the moneys received by the telegraph company for messages for Uniontown, and for any offices between Connellsville and Uniontown, at any of the telegraph company's offices, should be retained by the telegraph company. There was also a provision giving the telegraph company the privilege of purchasing the line at any time they might choose to do so, upon terms stated. There was no limitation of time for the running of either contract. The practical effect of the agreement between Shaw and the railroad company was, that he was to build a telegraph line for the company, which they were to maintain, and pay him one-half of the receipts to which they were entitled under their contract with the U. S. Tel. Co. Undoubtedly a covenant would be implied on the part of the railroad company to do business on the line of telegraph, as that was the manifest purpose of the contract: Watson v. O'Hern, 6 W. 362; Lyon v. Miller, 12 Harr. 392; Koch & Balliet's Appeal, 9 W. N. C. 343. It is equally clear, that for a breach of this implied covenant, or of the express covenant for the payment of one-half the earnings, Shaw would be entitled to compensation in damages in an action at law on the contract. Koch & Balliet's Appeal, and cases cited supra.

Now the injury complained of in this case is, that the P. & C. R. R. Co., after having for nine years performed the contract on their part and paid the plaintiffs $2,912 as their share of the earnings, from and after April 1st 1874 excluded all commercial business from the telegraph line, and neglected and refused to make any compensation for the use of the line. The bill further charges that the railroad company has realized large profits from the use of the line, but refuses to pay to the plaintiffs their share of the same, and by excluding from the line the commercial business, has rendered the line valueless to the plaintiffs. There is some apparent incongruity in these last averments, but that is quite immaterial, since, so far as the rights of the plaintiffs are concerned, it is only essential to consider the actual breaches of the covenants expressed or implied in the agreement between the parties. It may be mentioned, though it is not material to the discussion, that the rights of Shaw under the contract in question were duly passed to the present plaintiffs by assignment, and also that, by a subsequent agreement in 1867, between the P. & C. R. R. Co. and the West. Union Teleg. Co. which had become vested with the rights and property of the United States Teleg. Co., some modification was made in contracts existing between the P. &

C. R. R. Co. and the United States Teleg. Co. There is nothing, however, in this latter contract that can affect any matter at issue in the present contest, as it would not be competent for the defendant to affect any rights of the plaintiffs by any agreements with other parties unassented to by the plaintiffs.

Returning to the consideration of the principal contract involved in this controversy, we find that the injury complained of is the non-payment of moneys which would be due to the plaintiffs, if the defendant continued to maintain and work the line. For the time that it was worked according to the agreement, the moneys actually received were in good faith divided. The plaintiffs have no ownership of the telegraph line. They have no right to participate in working it. The defendant has the exclusive right to take the earnings, and when they are received they are the sole property of the defendant. After their receipt, arises the obligation, to pay to the plaintiffs a sum equal to one half of the amount received. Surely, this is but a bare pecuniary obligation, the breach of which is fully and adequately compensated by a recovery in damages of the amount which ought to be paid.

And so also, if the defendant fails to carry on the business according to the agreement, and by reason of such failure, does not receive the moneys which would have come to hand, had the business actually been conducted, here again is but a breach of contract, which can be compensated in damages. In either or any aspect of the case, therefore, the remedy of the plaintiffs is adequate and ample by action at law. In the present case there is no element of specific performance, and a decree to that effect could not have been made, if it had been asked. No such prayer, however, is contained in the bill. There is no matter of fraud, mistake, accident, trust, discovery, or mutual account, in the bill or in the case, and hence we are unable to perceive any species of equity jurisdiction, upon which a decree can be founded. The only accounting that can enter into the case is unilateral, and even that is only a basis for ascertaining damage. The authorities applicable to the controversy are quite familiar, and only a brief reference to a few of them is required. In Gloninger *v.* Hazard, 6 Wr., on p. 401, we said : " There is no doubt of our concurrent jurisdiction with courts of law, in matters of account, where the accounts are mutual and complicated, and also where they are all on one side, but discovery is sought, and is material to the relief. . . . But on the other hand, where the accounts are all on one side, and no discovery is sought or required, courts of equity will decline taking jurisdiction of the cause." See also 2 Norr. 441; Kauffman's Appeal, 5 P. F. Smith 383. A complainant averred that he agreed to sell a lot

[Commonwealth for use *v.* Walter.]

to the defendant, he to pay at the same rate as he paid others, and that he paid others at a rate which he refused to pay to complainant, and prayed for specific performance. *Held,* that the agreement was simply for the payment of money, and complainant had an adequate remedy at law: Koch & Balliet's Appeal, 9 W. N. C. 343. Where a right to mine is granted in consideration of a royalty reserved, the law implies a covenant by the grantee to work the mine with diligence so that the grantor may receive the contemplated compensation; but in the absence of special grounds of equity jurisdiction, such covenant will not be specifically enforced in equity, an action at law for damages being an adequate remedy. See also Grubb's Appeal, 9 Norr. 228.

It is unnecessary to prolong the citations. We are of opinion that the plaintiffs have an adequate remedy at law, and that there are no special grounds of equitable relief exhibited. In such cases there is no jurisdiction in equity to entertain the complaint or make any decree.

> Decree reversed, and bill dismissed at the cost of the appellees.